Timothy RHINER, Appellant,

v.

CITY OF CLIVE, Iowa, and James
Edward McMahon, Appellees.

No. 84–502.

Supreme Court of Iowa.

Aug. 21, 1985.

Gary S. Gill, Des Moines, for appellant.

Harry Perkins III and Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker and Ordway, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Plaintiff Timothy Rhiner was shot by defendant James Edward McMahon, a policeman for the defendant city of Clive. Rhiner appeals from the judgment based on jury verdicts for defendants. He raises a number of issues relating to discovery, evidentiary rulings, instructions, and jury misconduct. We affirm.

At trial ample evidence was produced from which the jury could have found the following facts. Rhiner spent July 30, 1980, working at the Golden Slipper, his father's bar in Waukee, Iowa. That evening he and his cousin, Bob Olson, drove to Winterset and several neighboring towns, distributing advertising for a band performance at the Golden Slipper. They drank a quantity of beer and drank further after returning to the tavern at about 11 p.m. Rhiner's occasional date, Tammy Cave, was waiting for him there. At about 2 a.m. the bar was closed and the trio left in a pickup truck, with Rhiner driving toward Des Moines. At some point along the road the men relieved themselves and Olson took the wheel.

Olson parked the pickup on a road near an industrial area of Clive, in the Greenbelt Park bordering Walnut Creek. Rhiner and Cave went back to the truck bed, removed their clothing, and engaged in intercourse. Olson was out of the pickup cab, wandering aimlessly around. When he saw a patrol car approaching he warned Rhiner, who thought he was joking and paid no attention. Olson then hid in the adjoining dark woods.

Officer McMahon approached the pickup in his patrol car shortly before 3 a.m. on July 31. He saw a head "pop up" out of the pickup bed, a leg raise, and then cloth-

ing being drawn over the leg. McMahon walked to the pickup where his flashlight disclosed Rhiner and Cave prone in the pickup, still only partially dressed. He reminded them of the posted 10:30 p.m. curfew in the park and asked for identification. Rhiner and Cave finished dressing and provided their driver's licenses. McMahon smelled liquor on Rhiner's breath and noted an impairment of his manual dexterity. After requesting Rhiner and Cave to remain by the pickup, McMahon went to his patrol car and started a radio identification check with the driver's licenses provided. Rhiner became impatient and approached the patrol car three times, increasingly agitated, inquiring about the delay. On the last occasion he made a lewd remark, at which time McMahon radioed another patrolman for assistance.

Rhiner then got back in the pickup cab, which Cave already had entered, as though to drive away. McMahon demanded that Rhiner get out and told Rhiner he was being placed under arrest for public intoxication. Rhiner retreated, McMahon grasped him by the belt, and Rhiner hit McMahon, knocking off his glasses. McMahon then hit Rhiner on the head with the flashlight and continued to take him under control by hanging onto his belt. Olson then ran out from the woods and he and Rhiner both began hitting and kicking McMahon, who went down. One of the men told Cave to get the driver's licenses and the patrol car keys, which she did. She then returned to the fray and began hitting McMahon with the flashlight he had dropped.

McMahon attempted to retreat to the patrol car to radio for help. Soon he was pinned against the right rear door, becoming weaker from repeated blows. McMahon believed he was about to lose consciousness. Cave exclaimed they should get his gun. McMahon felt someone tugging at his belt and holster area. He managed to pull his .357 magnum revolver and shot Rhiner and Olson at almost contact range. Olson ran and Rhiner dropped to the ground. Upon command, Cave dropped the flashlight. Then the patrolman that McMahon had summoned arrived.

Rhiner was shot in the abdomen and sustained extensive injuries, medical expense, and some permanent injury. Other facts will be provided as we discuss the issues in the divisions that follow.

Rhiner sued for his damages in two counts. The first count was based on tort, alleging assault and battery. The second count alleged deprivation of an unidentified [1] constitutional right in violation of 42 U.S.C. section 1983.[2] McMahon affirmatively pleaded self-defense and good faith. Following a long trial and a short deliberation, the jury returned defendants' verdicts. Trial court overruled Rhiner's motion for new trial and he has filed a timely appeal.

I. *Did trial court err by instructing jury that defendants could not be held liable under 42 U.S.C. section 1983 if McMahon and Clive were merely found to be negligent?*

Rhiner's petition alleged the following as a basis for both counts of his petition:

8. The aforesaid acts were done by Defendant, James Edward McMahon, *willfully,* and with *malicious* design and purpose of injuring and damaging Plaintiff.

9. The conduct of Defendant, James Edward McMahon, was in needless and *reckless disregard* of Plaintiff's rights and was *grossly negligent* in disregard for the safety of others who might be expected to be injured by such conduct.

---

1. Trial court's instructions identified this right as a liberty interest to be free from unlawful attacks on one's person.

2. Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1982).

10. The Defendant, City of Clive, Iowa, *failed to provide* proper training for Defendant, James Edward McMahon, or it was conducted in such a *reckless* and *grossly negligent* manner so that future misconduct, as present here, was *inevitable.* In addition, Defendant, City of Clive, Iowa, was *grossly negligent* or *reckless* in its supervision of its police officers, including, Defendant, James Edward McMahon, so that future police misconduct, as found herein, was *inevitable.* The Defendant City, exhibited a *deliberate indifference* to violations by its police force and the Defendant, James Edward McMahon, specifically.

(Emphasis added.)

From the outset it was Rhiner's contention that McMahon deliberately and unjustifiably shot him in the back from a distance of several feet. His cross-examination of McMahon included the following:

Q. You intended to shoot Olson, didn't you? A. Yes, sir.

Q. I take it you also intended to shoot Timothy Rhiner? A. Yes, sir.

Q. There were no accidents? This wasn't a misfire on your part? A. No, sir.

Trial court's instruction No. 10 imposed the burden on Rhiner to establish "[t]hat Defendant McMahon knowingly inflicted injury upon the plaintiff, as alleged." At trial Rhiner expressed a preference for his own requested instruction No. 4, which would have required him to establish "[t]hat Defendant, James E. McMahon, knowingly beat, bruised and wounded Plaintiff about the head and body as alleged." On appeal Rhiner claims no error relating to trial court's instruction No. 10.

Nonetheless, Rhiner did object to instruction No. 9, which, following the allegations of Rhiner's petition, generally informed the jury a municipality could be held liable under section 1983 for training, or failing to train, its officers in a grossly negligent, reckless, or deliberately indifferent manner. The objection was limited to a statement in the instruction that told the jury the municipality could not be held liable for simple negligence in training or supervision of its police force. Rhiner made the same objection with respect to instruction No. 14, which referred both to Clive and McMahon, but failed to object to instruction No. 17, which incorporated instruction No. 9 by reference.

On appeal Rhiner asserts trial court committed error in failing to sustain his objections to the instructions informing the jury that simple negligence would not support a section 1983 action. We first explore this contention as it relates to the city of Clive.

For many years municipalities were exempt from section 1983 liability. *See Monroe v. Pape,* 365 U.S. 167, 191–92, 81 S.Ct. 473, 486, 5 L.Ed.2d 492, 507 (1961). In *Monell v. Department of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court overruled *Monroe, id.* at 663, 98 S.Ct. at 2022, 56 L.Ed.2d at 618–19, and held municipalities could be held liable for unconstitutional acts resulting from implementation or execution of an officially sanctioned custom, policy, ordinance, or regulation. *Id.* at 694, 98 S.Ct. at 2037–38, 56 L.Ed.2d at 638; *see City of Oklahoma City v. Tuttle,* — U.S. —, —, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791, 800 (1985) ("*Monell* teaches that the city may only be held accountable if the deprivation [of constitutional right] was the result of municipal 'custom or policy.' "). At the same time, the *Monell* Court emphasized that section 1983 actions, against local governments, premised on the doctrine of respondent superior, would not be recognized. 436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 636. *See Parratt v. Taylor,* 451 U.S. 527, 537 n. 3, 101 S.Ct. 1908, 1913 n. 3, 68 L.Ed.2d 420, 429 n. 3 (1981); *White v. Talboys,* 573 F.Supp. 49, 50 (D.Colo.1983); *Cunha v. City of Algona,* 334 N.W.2d 591, 596 (Iowa 1983). These limitations on liability have been interpreted to immunize a municipality from section 1983 liability based on simple oversight or negligence in the training or supervision of its police force. *See, e.g., Berry v. McLemore,* 670 F.2d 30, 32–33 (5th Cir.1982); *Leite v. City*

*of Providence,* 463 F.Supp. 585, 590 (D.R.I. 1978). Nor can a municipality's liability be posited on a single isolated incident of excessive force by a police officer. *See Tuttle,* —— U.S. at ——, 105 S.Ct. at 2436, 85 L.Ed.2d at 804 (plurality opinion).

We hold the court's instructions as they related to simple negligence, if any, on the part of the city of Clive were not erroneous.[3] We next turn to that portion of instruction No. 14 which in part informed the jury that McMahon could not "be held responsible or liable under 42 U.S.C. § 1983 for any conduct which constitutes merely simple negligence."

■ McMahon convincingly argues that this portion of instruction No. 14 could not have prejudiced Rhiner, who neither alleged simple negligence on McMahon's part nor tried that issue. In this case Rhiner tried his case as he pleaded it: on a theory of willful and malicious police behavior. Rhiner's brief responds only that "[t]his error was prejudicial because it greatly increased the Plaintiff-Appellant's burden of proving the wrong committed by the Defendant-Appellee against the Plaintiff-Appellant." The balance of instruction No. 14, however, followed the language of Rhiner's petition (which he did not move to amend) in stating that McMahon's conduct which would give rise "to 42 U.S.C. § 1983 responsibility and liability must be such as to constitute recklessness or gross negligence." No objection was raised relating to this language, nor to the included definition of reckless or grossly negligent conduct as "a callous indifference or a thoughtless disregard for the consequences of one's acts or failure to act." Given this language, we cannot perceive how the language objected to, relating to simple negligence, increased Rhiner's burden of proof or prejudiced him in any way.

We further conclude this assignment of error is meritless on another ground. In *Parratt,* the Supreme Court indicated a section 1983 claim might be posited on the negligence of public employees, 451 U.S. at 534–35, 101 S.Ct. at 1912–13, 68 L.Ed.2d at 427–28, while in the same opinion disavowed a purpose to turn "every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." *Id.* at 544, 101 S.Ct. at 1917, 68 L.Ed.2d at 434. Subsequent federal decisions are in disarray, some apparently holding simple negligence of a public officer will not support a section 1983 action based on deprivation of a liberty right.[4] *See, e.g., Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982); *Mills v. Smith,* 656 F.2d 337, 340 (8th Cir. 1981); *Polson v. City of Lee's Summit,* 535 F.Supp. 555, 559–60 (W.D.Mo.1982).

For our present purposes, however, it is sufficient first to note the basic *Parratt* holding: the fourteenth amendment protects only against deprivations "without due process of law," and in case of property deprivation a postdeprivation remedy made available by the state may often satisfy this requirement, negating the contention that the claimant has suffered the loss of any right secured by the constitution under the language of section 1983. 451 U.S. at 537–39, 101 S.Ct. at 1914–15, 68 L.Ed.2d at 430–31. In *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court extended the *Parratt* rationale to intentional deprivations of property, stating that "[f]or intentional, as for negligent deprivations of property by state employees, the State's action is not complete ... unless it ... refuses to provide a suitable postdeprivation remedy." *Id.* at ——, 104 S.Ct. at 3204, 82 L.Ed.2d at 407–08.

---

**3.** A plurality of the Supreme Court considers it still an open question "whether a [municipal] policymaker's 'gross negligence' in establishing police training practices could establish a 'policy' that constitutes a 'moving force' behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the poli-

cymaker would be required." *Tuttle,* —— U.S. at —— n. 7, 105 S.Ct. at 2436 n. 7, 85 L.Ed.2d at 804 n. 7.

**4.** The issue is one we were not required to reach in *Christenson v. Ramaeker,* 366 N.W.2d 905, 910 (Iowa 1985).

■ A number of federal decisions, although holding a section 1983 action may be based on negligence, extend the *Parratt* analysis to deprivations of liberty and hold that availability of a state tort claim remedy may negate a claimant's assertion the claimant was deprived of liberty without due process of law. *See, e.g., Thibodeaux v. Bordelon,* 740 F.2d 329, 339 (5th Cir. 1984); *Daniels v. Williams,* 720 F.2d 792, 798 (4th Cir.1983); *Haygood v. Younger,* 718 F.2d 1472, 1481 (9th Cir.1983). Rhiner had an adequate postdeprivation remedy under Iowa Code chapter 613A, Tort Liability of Governmental Subdivisions. He acknowledged the state remedy when he pleaded in two counts, the first being an action under chapter 613A. He never alleged that the state procedures available for challenging the alleged deprivation did not satisfy due process requirements. *See Thibodeaux,* 740 F.2d at 334. In these circumstances, trial court's resolution of the issue of simple negligence vis-a-vis gross negligence in a section 1983 instruction could not be deemed prejudicial.

## II. *Did the court err in instructing the jury on McMahon's affirmative good faith defense?*

Trial court's instruction No. 18 provided:

Defendant police officer McMahon has asserted in this case that he acted in good faith in using the force he did upon the Plaintiff. The burden of proof to establish this defense is upon Defendant McMahon. This defense is not available to the Defendant City of Clive but only to Defendant McMahon.

The three elements of this defense are:

1. Defendant McMahon believed a certain amount of force was necessary to make an arrest and/or to protect himself from bodily injury at the hands of another, including the Plaintiff.

2. Defendant McMahon believed that use of that force was lawful under the circumstances, and

3. Defendant McMahon had reasonable grounds for each of the foregoing beliefs.

Should Defendant McMahon establish, by a preponderance of the evidence, each of the three elements to this defense, then your verdict in this case shall be for the said Defendant, and against the Plaintiff, even if the use of force in this case was in fact illegal or excessive.

Rhiner objected to this instruction, asserting it was not available unless McMahon first acknowledged that he had violated Rhiner's constitutional right and further, because it was inconsistent with McMahon's self-defense contention one of these defenses "had to be removed" from the instructions. On appeal, Rhiner asserts another ground: McMahon was required to show there was probable cause for the arrest before this defense was available. This ground was not asserted in Rhiner's trial exceptions to the instruction, and thus was not preserved for consideration here.[5] Rhiner additionally asserts as a brief point, but does not discuss, a conclusory contention that no facts in the record supported the instruction. We find this ground meritless.

■ The defense of good faith that police officers had available at common law has been held applicable to actions under section 1983. *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296 (1967); *Maiorana v. MacDonald,* 596 F.2d 1072, 1074 (1st Cir.1979) ("The defense of qualified immunity, which is available to local, state and federal law enforcement officers, protects the defendants from liability for damages if they acted with a good faith belief based upon reasonable grounds that the measures they took were necessary.").

---

5. *But see Saldana v. Garza,* 684 F.2d 1159, 1164 (5th Cir.1982) ("[I]t is clear that a police officer may be immune from liability under § 1983 even if it is later determined that probable cause for arrest did not exist.") *Cf. Trejo v. Perez,* 693 F.2d 482, 488 n. 11 (5th Cir.1982) (indicating the *Saldana* statement just quoted could be "true only when there is uncertainty as to whether the offense pointed to in support of probable cause existed").

■ Generally this qualified immunity defense must be pleaded and established by the defendant. *Landrum v. Moats,* 576 F.2d 1320, 1329 (8th Cir.1978); *cf. Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir. 1981) ("Once the official has shown that he was acting in his official capacity and within the scope of his discretionary authority, the burden [of persuasion] shifts to the plaintiff to breach the official's immunity by showing that the official lacked 'good faith.' ").[6]

Trial court's instruction No. 18 imposed a burden on McMahon to prove a subjective element. This may no longer be required following the decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 409–10 (1982). *See Mitchell v. Forsyth,* — U.S. —, —, 105 S.Ct. 2806, 2810–11, 86 L.Ed.2d 411, 419 (1985). We need not address this issue, however, because it has not been raised by either party.

■ It is clear that the law does not impose on police officers the burden to arrest only guilty parties. *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433, 442 (1979). They "must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office." *Scheuer v. Rhodes,* 416 U.S. 232, 246, 94 S.Ct. 1683, 1691, 40 L.Ed.2d 90, 102 (1974).

Applying these principles to the case before us, we conclude McMahon had the right to plead the defense of good faith. We thus confront Rhiner's first objection to instruction No. 18, the defense nonetheless was not available because the officer had not acknowledged that he had violated Rhiner's constitutional right. Notably, Rhiner cites no authority to support this view that utilization of a good faith defense implies an admission of a law violation. His confession and avoidance concept may have been distilled from those cases in which police officers, acting in conformance with a statute, rule, or regulation later found to be invalid, conduct a search or make an arrest. In such cases a violation of rights has occurred. The officers' defense is that they acted in good faith. *See generally Landrum,* 576 F.2d at 1327–29.

■ We hold that McMahon could assert the good faith defense without admitting that he used excessive force. The instruction permitted the jury, upon examination of all the evidence, to find that the good faith elements were present and McMahon not liable even though they additionally might find he, in fact, used excessive force. *See Richardson v. City of Conroe,* 582 F.2d 19, 19–20 (5th Cir.1978) (even though facts were disputed, officers entitled to good faith instruction). This is the role and purpose of such an instruction.

■ Nor do we find trial court erred in instructing the jury on this defense as well as McMahon's additional claim of self-defense. It is apparent that McMahon simply pleaded in the alternative to protect himself should the jury find he had, in fact, used excessive force. Iowa Rule of Civil Procedure 72 permits alternative affirmative defenses ("[The answer] may contain as many defenses ... as the pleader may claim, which may be inconsistent.").

■ Rhiner additionally contends the court should have used his instruction No. 20 instead of instruction No. 14. We have examined the requested instruction and find it is verbose and confusing. In addition, the instruction incorporates the confession and avoidance concept we already have rejected.

We find no merit in Rhiner's objections and exceptions to instruction No. 14.

III. *Did trial court err in instructing the jury with respect to probable cause for arrest?*

■ Trial court's instruction No. 11 sought to provide the jury with the definition of "probable cause" to arrest. Rhin-

---

6. The good faith defense is not available to the municipality. *Owen v. City of Independence,* 445 U.S. 622, 640–44, 100 S.Ct. 1398, 1410–12, 63 L.Ed.2d 673, 686–89, *reh'g denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980); *Dickerson v. Young,* 332 N.W.2d 93, 100 (Iowa 1983).

er's brief asserts the instruction was inadequate in several particulars. McMahon points out that he, not Rhiner, objected to the instruction during the trial. Rhiner's trial brief does not respond to this contention. Our examination of the record convinces us that Rhiner made no objection to instruction No. 11, thus any alleged error was not preserved.

*IV. Did trial court err in instructions relating to the right to resist arrest and a police officer's right to self-defense?*

Trial court's instruction No. 23 stated:

A person is not authorized to use force to resist an arrest, either of himself or another, which the person knows is being made by a police officer, even if the person believes that the arrest is unlawful or the arrest is in fact unlawful.

Rhiner objected to this instruction on the grounds that it should be corrected to "bring it into line" with 1979 Iowa Code section 704.3 and that the jury should be instructed they could find that "Bob Olson and Tammy Cave both operated under section 704.3." On appeal, Rhiner impermissibly expands his objection to assert the instruction should have included the law contained in 1979 Iowa Code sections 704.6 and 804.8.

Iowa Code section 704.3 states:

A person is justified in the use of reasonable force when he or she reasonably believes that such force is necessary to defend himself or herself or another from any imminent use of unlawful force.

■■■ The language of instruction No. 23, however, was derived from Iowa Code section 804.12 and was a correct statement of law. Rhiner concedes this in his reply

brief. The cases Rhiner relies on to support his contention that one has a right to resist an unlawful arrest [7] were impliedly overruled when the Iowa Legislature enacted Iowa Code section 804.12:

A person is not authorized to use force to resist an arrest, either of himself, herself, or another which the person knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if the person believes that the arrest is unlawful or the arrest is in fact unlawful.

Iowa Code § 804.12 (1979). Thereafter, this court in *State v. Thomas*, 262 N.W.2d 607 (Iowa 1978), applied section 804.12 to acknowledge the demise of "the antiquated common law rule" and to overrule prior inconsistent Iowa decisions, *id.* at 611, which, of course, included those relied on by Rhiner.

Rhiner's second objection lodged against instruction No. 23, relating to the right of Olson and Cave to defend against unlawful force, surely was satisfied when trial court included that concept in instruction No. 25. Rhiner made no objection to instruction No. 25, it being a verbatim duplication of his requested instruction No. 18.

■■■ Instruction No. 24 incorporated McMahon's self-defense theory. Rhiner objected that it failed to incorporate his requested instructions Nos. 15 and 16, the thrust of which would have required McMahon "to avoid the confrontation by seeking and using an alternative course of action." Rhiner additionally asserted that McMahon was not justified in using deadly force pursuant to Iowa Code section 804.8 [8] because the record contained no evidence that Rhiner was using deadly force. Trial

---

7. *State v. Rowe*, 238 Iowa 237, 247, 26 N.W.2d 422, 427 (1947), and *State v. Fador*, 222 Iowa 134, 140, 268 N.W. 625, 628 (1936).

8. Iowa Code section 804.8 provides in relevant part:

A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any

person from bodily harm while making the arrest. However, the use of deadly force is only justified when a person cannot be captured any other way and either

1. The person has used or threatened to use deadly force in committing a felony or

2. The peace officer reasonably believes the person would use deadly force against any person unless immediately apprehended.

court overruled these objections, pointing out that the evidence indicated "a situation here that deteriorated in self-defense." We agree the evidence generated a jury issue on this point.

■■■ Although we would not endorse the instruction No. 24 as an illuminating statement of the applicable law, it was sufficient to withstand Rhiner's objections. We find no error.

## V. *Did trial court err in overruling objections to testimony detailing prior incidents of Rhiner's violence?*

At trial, defense counsel in cross-examination inquired of Rhiner: "Q. Now, prior to the date of July 30, 1980 had you experienced problems in getting along with police officers before?" Rhiner's counsel objected, and further proceedings were held in chambers. McMahon's attorney conceded he was about to inquire into Rhiner's prior incidents of fighting, resisting arrest, and psychiatric counseling relating to violence.

Rhiner's counsel objected on the grounds this evidence was irrelevant to any issue in the case; if relevant, more prejudicial than probative; and inadmissible under Iowa Rule of Evidence 404(a). Counsel for McMahon responded that the evidence was admissible under an exception found in Iowa Rule of Evidence 404; that it had a bearing on and refuted Rhiner's claim that McMahon's assault resulted in emotional distress and psychological damage and was relevant on the damage issue, which involved Rhiner's life expectancy and enjoyment of life. Trial court permitted testimony relating to several fights Rhiner had with third persons before the McMahon fight and his counseling concerning those incidents. Rhiner renews his trial court objections on this appeal.

Several Iowa Rules of Evidence aid our analysis. Relevance is determined by Iowa Rule of Evidence 401:

*"Relevant evidence"* means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Whether evidence is relevant is a question committed to the trial court's discretion. *Kalianov v. Darland,* 252 N.W.2d 732, 735 (Iowa 1977); Iowa R. Evid. 401 committee comment.

Evidence, even if relevant, is not always admissible:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Iowa R.Evid. 403. This question, too, is committed to the trial court's discretion. *See id.* committee comment; *Carson v. Mulnix,* 263 N.W.2d 701, 706 (Iowa 1978).

■■■ Iowa Rule of Evidence 404(a)(2)(B) plainly allows introduction of character evidence in a civil action like this one. It provides in pertinent part:

(a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(2) *Character of victim.*

. . . .

(B) *In civil cases.* Evidence of character for violence of the victim of assaultive conduct offered on the issue of self defense by a party accused of the assaultive conduct, or evidence of peaceable character to rebut the same.

This case clearly falls within the above exception. Here McMahon offered evidence of Rhiner's character for violence on the issue of self-defense. Trial court committed no error in concluding character evidence was admissible under this rule. Rhiner, however, argues rule 404(a)(2)(B) should not be followed because it is a bad rule and has no counterpart in the federal rules of evidence. We are unpersuaded by these contentions.

On appeal Rhiner raises a new issue that, had it been urged and thus preserved in trial court, would have merited serious consideration. McMahon inquired into specific instances of conduct on Rhiner's part. This testimony may have been contrary to Iowa Rule of Evidence 405, which states:

(a) *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Rule 405(a) may have barred McMahon's inquiry into specific acts of violence unless rule 405(b) controlled. We are not required to reach that question because no rule 405 objection was urged in trial court. The issue, of course, cannot be raised here for the first time. *In re Marriage of Boyd,* 200 N.W.2d 845, 850 (Iowa 1972).

VI. *Did trial court err in relying on the excited utterance exception to the hearsay rule when overruling objections to statements made by Olson?*

Bob Olson, Rhiner's cousin and companion, was called as a plaintiff's witness. He testified that McMahon was brutally beating Rhiner with his flashlight, Rhiner called for his help, and he attempted to pull McMahon away from Rhiner. McMahon was biting Olson's finger, but lost his balance when Olson was able to pull away. McMahon then produced his gun and shot twice.

Olson was shot in the left thigh. Nonetheless, he ran through the creek to a residential porch in the neighborhood. About fifteen minutes after the shooting, officer Steve Hoffman and another policeman found Olson there.

Hoffman was called as a defense witness. He testified that when found, Olson was conscious, coherent, in pain, and excited. At that time and in the ambulance on the way to the hospital, Olson, according to Hoffman, said, "I was real stupid. I deserved it. He should have killed me. Please tell the officer I'm sorry. Dear God, forgive me." When questioned on cross-examination, Olson testified he had no recollection of making these statements.

Trial court admitted Hoffman's testimony over Rhiner's objection it was hearsay and irrelevant, and its unfair prejudice substantially outweighed its probative value. Rhiner contends that, in all the circumstances, Olson's alleged comments were not admissible under the "excited utterance" exception to the hearsay rule. Rhiner argued that the statements made by Olson obviously were reflective in nature and deliberately made to secure assistance from the police.

Hearsay exceptions are collected at Iowa Rule of Evidence 803. The exception at issue here is found at subparagraph 2:

(2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

To qualify as such exception, the statement must be made under the excitement of the incident rather than on reflection or deliberation. *State v. Stevens,* 289 N.W.2d 592, 596 (Iowa 1980). Trial court has discretion to make this determination when ruling on the hearsay objection. *State v. Ogilvie,* 310 N.W.2d 192, 196 (Iowa 1981).

Ample evidence supported trial court's conclusion these statements qualified under the Iowa Rule of Evidence 803(2) hearsay exception. Testimony disclosed Olson was clearly in pain, although coherent, when he made the above statements. Only a short interval had elapsed after the shooting. Olson testified that in this interval he was very scared and felt he was struggling for his life.

We hold trial court did not abuse its discretion in overruling Rhiner's objections to the questions eliciting Olson's statements.

VII. *Did trial court err in overruling objections to demonstrative evidence?*

At trial, McMahon called as a witness Robert Harvey, an agent of the Iowa Division of Criminal Investigation and an expert in gunshot residue determination. This witness described experiments he performed to determine the range at which McMahon shot Rhiner and Olson. To make this determination, Harvey shot McMahon's gun into white cotton targets, then compared them with the shirt Rhiner wore and the shorts Olson wore on the night of the shooting. All four of these articles were handled by Harvey during his testimony but, in the end, only Rhiner's shirt was offered in evidence. It was admitted without objection.

Harvey concluded McMahon shot the two men from a distance of not more than two inches while they were facing him. This testimony refuted Rhiner's theory that he and Olson were shot in the back from a distance of several feet.

During the course of Harvey's description of his experiments, Rhiner objected that no foundation had been laid. Upon being pressed by the court, he argued that the items Harvey was using had not been offered in evidence. Trial court overruled this objection.

On appeal Rhiner adds the complaint that the trial court should have instructed the jury on the difference between demonstrative and real evidence. He does not, however, cite any pertinent authority to support his trial court objection. Further, the core of Rhiner's complaint—that without the supporting evidence in the record Harvey could not have expressed an opinion as to the crucial distance—is contrary to Iowa Rule of Evidence 703:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*See also* Iowa R.Evid. 705 ("The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise."). Had Rhiner thought the articles not offered in evidence would have helped his cause with the jury, he could have offered them himself. No prejudice appears in this situation.

Finally, we find no merit in Rhiner's contention trial court erred in not instructing the jury in the difference between demonstrative and real evidence. Assuming such an instruction would have been appropriate, Rhiner never raised this objection at trial.

VIII. *Did trial court err in overruling Rhiner's motion to compel discovery?*

McMahon testified that after the shooting Rhiner lay on the ground yelling profanities and exclaimed, "I'm going to sue you." Within hours, the city of Clive began an investigation headed by the city attorney. The city contended this was both an internal investigation and preparation in anticipation of the promised litigation. About one month after being shot, Rhiner filed an Iowa Code chapter 613A notice of his claim. He did not, however, commence his own discovery until May 13, 1981, about the time new trial counsel appeared in the proceedings. At that point the witnesses' statements taken by Clive in its investigation became the subject of a discovery dispute.

In the course of discovery the city of Clive supplied the names of all persons whose interviews it reduced to writing. Some of the requested materials were not supplied by the city on the ground they were exempt under Iowa Rule of Civil Procedure 122(c), as trial preparation materials. Rhiner's second motion to compel was before the court at the commencement of the trial. At that time the arguments re-

flect he had not depositioned any of the persons whose written statements were sought with the exception of McMahon. McMahon's counsel agreed to furnish any statements requested by, or employed in the examination of, a witness, whether called by Rhiner, McMahon, or Clive. Rhiner offered no showing he was unable to obtain the information he sought. Trial court overruled the motion to compel and Rhiner asserts this was error.

In these circumstances trial court had a wide discretion and will not be reversed unless an abuse of discretion is found. *Ashmead v. Harris*, 336 N.W.2d 197, 199 (Iowa 1983). Iowa Rule of Civil Procedure 122(c) is quoted in full in *Sullivan v. Chicago & Northwestern Transportation*, 326 N.W.2d 320, 327 (Iowa 1982), and is applicable here. Particularly pertinent is that portion of rule 122(c) making materials such as these available "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

In *Schaffer v. Rogers*, 362 N.W.2d 552, 554–57 (Iowa 1985), we applied this rule to deny discovery in a factual situation strikingly similar to this one. The analysis in that opinion is applicable here and *Schaffer* is controlling. We hold trial court did not abuse its discretion in overruling Rhiner's motion to compel discovery.

IX. *Did trial court err in overruling Rhiner's motion for new trial, grounded on alleged jury misconduct?*

During the course of trial, juror Evans sought out the judge to discuss a concern that Evans thought might be a barrier to his continued jury service. While reading a newspaper Evans learned his best friend, a Des Moines police officer, might be involved in litigation brought by a man claiming the officer and three others used excessive force in arresting him. In response to questions, however, Evans reassured the judge and the attorneys that his ability to be fair and impartial was not impaired.

Rhiner moved Evans be excused and an alternate used. This motion was resisted by McMahon and Clive; the court reserved ruling.

Rhiner's motion for new trial alleged various incidents of misconduct on the part of juror Evans. At the hearing on the motion, Rhiner further introduced evidence that his brother was a client at the Polk County Association for Retarded Citizens, where Evans worked as an accountant. Evans testified that he was not aware of this relation when the trial started and that he later found out he had signed five checks payable to the brother, in amounts less than two dollars each, among the 350 checks he signed every two weeks. Evans also admitted the newspaper story he read about his policeman friend appeared beside a story relating to this trial, but denied he had read any portion other than the caption. He denied talking about the case to fellow employees. These employees confirmed Evans' testimony, which was controverted only by hearsay.

In *State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984), we recently reviewed the principles by which we weigh alleged jury misconduct. Nothing Rhiner has produced on this issue meets the requirement that "it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict." *Id.* We do not find an abuse of discretion in these circumstances unless trial court's ruling is clearly unreasonable. *State v. Harrington*, 349 N.W.2d 758, 762 (Iowa 1984). No abuse of discretion occurred here.

We have examined all of the arguments made by Rhiner, even though not discussed in this opinion. We find no reversible error. The judgment of the district court is affirmed. All costs are taxed to Rhiner except for the printing of defendants' brief, which violates our rule of appellate procedure 16(a) by being printed only on one side of the sheet.

AFFIRMED.