Robert L. WILLSON, Appellee,

v.

CITY OF DES MOINES, Iowa; Nick Brown; and Larry Bedford, Appellants.

No. 84–1531.

Supreme Court of Iowa.

April 16, 1986.

Rehearing Denied May 21, 1986.

Loren J. Braud and J.M. Sullivan, Asst. City Attys., Des Moines, for appellants.

William J. Conroy, Jr., Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, SCHULTZ, WOLLE and LAVORATO, JJ.

McGIVERIN, Justice.

Defendants City of Des Moines, Nick Brown and Larry Bedford challenge a judgment entered on a jury verdict in favor of plaintiff Robert L. Willson on Willson's claims for damages under 42 U.S.C. section 1983 (1981). Plaintiff asserts that the defendant Des Moines police officers, Brown and Bedford, deprived him of his constitutional rights when making application for,

and in the execution of, a search warrant for his property. Plaintiff Willson on cross-appeal contends that the district court erred in directing a verdict on his invasion of privacy claim and on the issue of punitive damages. We now affirm the district court as to defendants' appeal and affirm in part and reverse in part as to plaintiff's cross-appeal. We remand with directions for entry of appropriate judgment.

The events giving rise to this appeal arose in connection with the application for and execution of a search warrant for plaintiff's home and place of business. Des Moines police officers Nick Brown and Larry Bedford were a part of a police tactical unit which had been attempting a sting operation in an effort to curb the sale of stolen property.

On January 11, 1981, defendant Brown and Richard Schaffer, another member of the tactical unit, provided information, and Schaffer made application to the district court for a search warrant to be executed at plaintiff's home and place of business. The search warrant which was issued by the court allowed peace officers to search for specified shotguns, a handgun and a television set.

On January 13, the warrant for plaintiff's home and place of business was executed by Des Moines police officers. The items authorized to be seized in the search warrant were not found, but a large quantity of other items, such as tools, were seized by the officers during the execution of the warrant. Plaintiff was arrested at that time on a theft charge which was later dismissed. Defendant Bedford was the officer supervising the search at Willson's Auto Body Shop, plaintiff's place of business. There was another search warrant executed that same day at a Des Moines residence as a part of the sting operation. That search was not connected with Willson.

Later that day, the news media apparently was informed by defendant Brown at the Des Moines police station of the execution of the warrants. Plaintiff alleges that in these conversations Brown made untrue statements.

Most of the property seized at Willson's home and business later was determined not to be stolen and was returned to him with the exception of a few items.

Plaintiff's original petition filed on June 11, 1981, was based on a 42 U.S.C. section 1983 count alleging defendants violated plaintiff's fourth and fourteenth amendment rights under the United States Constitution in unlawfully obtaining and executing the search warrant. In addition, there were five common law tort claims including false imprisonment and false arrest, malicious prosecution, trespass, conversion and interference with prospective business advantage.

On March 13, 1984, plaintiff moved to amend his petition, Iowa Rule of Civil Procedure 88, to state an additional claim for invasion of privacy by defendants, alleging that their statements put him in a false light. This was resisted by defendants, but the amendment was allowed by the court.

Defendants filed an answer to plaintiff's amended petition, contending that Iowa Code chapter 613A (1981) provided the exclusive remedy in Iowa for torts of municipalities and their employees.

The case then proceeded to trial. At the close of plaintiff's evidence and of all evidence, defendants moved, in the court-reported record, for dismissal or for a directed verdict on several grounds. Iowa R.Civ.P. 216. The court reserved ruling on the motion.

The case was submitted to the jury, and a verdict was returned against defendant Bedford on plaintiff's section 1983 claim that he exceeded the scope of the search warrant in executing it. Actual damages of $5,150 and punitive damages of $1,000 were awarded to plaintiff on this count. The jury also returned a verdict against defendant Brown on the section 1983 claim that Brown made material misrepresentations to the court in obtaining the search warrant and awarded plaintiff $500 actual damages and $500 in punitive damages. A

verdict was returned against defendant Brown on plaintiff's false light invasion of privacy claim, and actual damages of $3,000 and punitive damages of $1,000 were awarded. The jury also returned a verdict against the City of Des Moines on the conversion claim in the amount of $258.50 for property improperly taken under the search warrant and not returned to plaintiff.

Defendants then filed written motions for directed verdict, again asserting that Iowa Code chapter 613A provided the exclusive remedy for plaintiff's claims, and, thus, there was no claim available under section 1983. Defendants also moved for a directed verdict as to punitive damages against all defendants and for dismissal of the invasion of privacy claim.

The court granted defendants' motion for a directed verdict on the invasion of privacy claim against defendant Brown on the ground that the evidence failed to show Brown had knowledge or acted in reckless disregard as to the falsity of the publicized statements. This ruling was in substance a grant of judgment notwithstanding the verdict. Iowa R.Civ.P. 243. The court also granted defendants' motion for directed verdict as to the punitive damage portion of the section 1983 claims, finding the evidence insufficient to support the awards because there was no evidence of any malice or reckless disregard for plaintiff's constitutional rights on the part of any defendant. Defendants' other motions were overruled. In its ruling, the district court also held plaintiff entitled to attorney fees because of the jury's damage awards under section 1983. *See* 42 U.S.C. § 1988.

Judgment was entered against defendant Bedford for the sum of $5,150 compensatory damages under the section 1983 claim and for the same amount against defendant City of Des Moines for vicarious liability for its employee under Iowa Code sections 613A.2 and 613A.8. Defendant City of Des Moines was held liable for the amount of $258.50 on the conversion claim. Judgment was entered against defendant Brown in the amount of $500 compensatory dam-

ages under section 1983 and for the same amount against the City of Des Moines pursuant to Iowa Code section 613A.2. The court also awarded plaintiff Willson attorney fees of $21,058.42 under 42 U.S.C. section 1988 and interest thereon from the date of the favorable verdict.

Defendants appealed to us. Plaintiff timely filed notice of cross-appeal. Iowa R.App.P. 5(a).

The determinative issues we must consider are: 1) whether plaintiff was entitled to relief under 42 U.S.C. section 1983 in light of the state remedy provided in Iowa Code chapter 613A; 2) whether plaintiff was properly awarded attorney fees for this action; 3) whether the district court erred in directing a verdict on plaintiff's false light invasion of privacy claim; and 4) whether the district court erred in directing a verdict on plaintiff's claims against defendants Brown and Bedford for punitive damages. The first two issues are raised on defendants' appeal and the last two on plaintiff's cross-appeal.

I. *Availability of 42 U.S.C. section 1983.* 42 U.S.C. section 1983 gives individuals a cause of action for damages and injunctive relief for deprivations of federally protected rights caused by persons acting under color of state law. *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252, 258 (1978). Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

A. *Categories of constitutional rights deprivation cases.* We must determine the type of constitutional deprivation plaintiff allegedly has suffered. In *Daniels v. Williams*, 474 U.S. ——, ——, 106 S.Ct. 662, 677, 88 L.Ed.2d 662, 672 (1986) (Stevens, J., concurring), it was stated:

> It is not enough to note that they [petitioners] rely on the Due Process Clause of the Fourteenth Amendment, for that Clause is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill of Rights. Thus, the State, as well as the Federal Government, must comply with the commands in the First and Eighth Amendments; so too, the State must respect the guarantees in the Fourth, Fifth, and Sixth Amendments. Second it contains a substantive component, sometimes referred to as "substantive due process," which bars certain arbitrary government actions "regardless of the fairness of the procedures used to implement them." Ante, at —— [106 S.Ct. at 665], 88 L.Ed.2d [at] 668. Third, it is a guarantee of fair procedure, sometimes referred to as "procedural due process": the State may not execute, imprison, or fine a defendant without giving him a fair trial, nor may it take property without providing appropriate procedural safeguards. The type of Fourteenth Amendment interest that is implicated has important effects on the nature of the constitutional claim and the availability of § 1983 relief.

(Footnotes omitted.)

Plaintiff Willson sued under section 1983 seeking damages for fourth and fourteenth amendment violations which allegedly occurred on January 13, 1981, when defendants acting under color of state law obtained and executed a search warrant on his property. The fourth amendment has been held applicable to the states by virtue of the adoption of the fourteenth amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). Thus, plaintiff alleged a violation of a specific constitutional right as defined in the Bill of Rights, not purely a claim for deprivation of due process under the fourteenth amendment.

The district court submitted to the jury under section 1983 the issues of whether the search warrant was obtained by material misrepresentations and whether defendants exceeded the scope of the warrant in executing it.

Having concluded that plaintiff's petition properly states a claim for deprivation of federal constitutional rights, the question becomes whether that deprivation is actionable under section 1983. Thus, we turn to defendants' argument that this suit is barred by the principles enunciated in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

*Parratt* involved a section 1983 suit for damages of $23.50 brought by a prison inmate in Nebraska against a warden and a prison hobby manager for their alleged negligence in causing the loss of certain hobby materials ordered by mail. The plaintiff alleged that the defendants deprived him of property without due process of law. The Court found plaintiff's interest in his hobby materials was clearly a property interest under state law and, therefore, a property interest for due process purposes as well. The alleged loss of hobby materials, even though negligently caused, was held to be a deprivation.[1] However, the Court reasoned, citing *Ingraham v. Wright*, 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711, 737 (1977), that

---

**1.** This part of the holding, that the due process clause is implicated through the negligence of a state official, in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) has been overruled. In *Daniels v. Williams*, 474 U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, 474 U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Court held that mere negligence by a state official is not the type of state action the fourteenth amendment's due process clause was intended to prevent. As a result, the two inmates were not allowed to proceed under section 1983 against corrections officers who allegedly were negligent in protecting them from various injuries.

plaintiff had an adequate remedy under state law.[2] 451 U.S. at 542–43, 101 S.Ct. at 1916, 68 L.Ed.2d at 433. Nebraska provided an adequate postdeprivation hearing under state law in the form of a tort action against the state that would fully compensate the plaintiff. *Id.* at 543, 101 S.Ct. at 1917, 68 L.Ed.2d at 434.[3]

Therefore, the Court reasoned, the alleged deprivation of property[4] while wrongful was not without due process of law, and, thus, the inmate's claim failed to state a cause of action under 42 U.S.C. section 1983.

Thus, *Parratt* suggests that if a plaintiff has a post-deprivation state remedy available, due process may be satisfied. In the present case, plaintiff presumably could seek redress against defendants in a state court action brought under Iowa Code chapter 613A. That statute, known as the Municipal Tort Claims Act, provides the exclusive remedy for any civil action against a municipality or one of its officers.[5] Iowa Code § 613A.4. Defendants claim that this state remedy provides ade-quate relief, and, thus, plaintiff's action under section 1983 is foreclosed.

However, two important restrictions on the *Parratt* rationale exist. First, *Parratt* does not apply if a plaintiff alleges that the constitutional deprivation occurred as a part of an established state procedure.[6] Here, plaintiff does not contend that the alleged violations occurred as a result of an established state procedure. Thus, this first restriction is inapplicable. Second, and most crucially, *Parratt* only represents a restriction on a claim alleging a deprivation of an underlying right to procedural due process.

B. *Violations of specific constitutional rights.* The *Parratt* doctrine only applies to claimed violations of procedural due process. It is not applicable to violations of specific constitutional rights contained in the Bill of Rights and made applicable to the states by virtue of the fourteenth amendment regardless of the availability of a state remedy. *See Daniels,* 474 U.S. at ——, 106 S.Ct. at 677–78, 88 L.Ed.2d at 672–73 (Stevens, J., concurring).

---

**2.** In *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), plaintiffs were junior high school students challenging the constitutionality of a state statute which permitted school authorities to administer corporal punishment. In addressing plaintiffs' procedural due process claim, the Court found a liberty interest safeguarded by the due process clause was implicated by the imposition of corporal punishment. However, the deprivation was found not to be without due process because the state provided the students with reasonable damage remedies through its common law of torts which were "fully adequate to afford due process." *Id.* at 672, 97 S.Ct. at 1413, 51 L.Ed.2d at 731. *See* Note, Federalism, Section 1983 and State Law Remedies: Curtailing the Federal Civil Rights Docket by Restricting the Underlying Right, 43 Univ. of Pitt.L.Rev. 1035 (1982).

**3.** *See* Neb.Rev.Stat. §§ 81–8, 209–39 (1976).

**4.** The logic of *Parratt* permits no principled distinction between deprivations of property and liberty interests. Therefore, this court has followed those jurisdictions which apply *Parratt* to a deprivation of a liberty interest. *Rhiner v. City of Clive,* 373 N.W.2d 466, 472 (Iowa 1985). In *Rhiner,* we held that availability of a state tort claim remedy, such as our Iowa Code chapter 613A procedure, may negate a claimant's assertions under section 1983 that he or she was deprived of liberty without due process of law. 373 N.W.2d at 472.

**5.** Iowa Code section 613A.1(3) defines a tort as:

every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or *denial or impairment of any right under any constitutional provision,* statute or rule of law.

(Emphasis supplied.)

**6.** In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, the Nebraska prison authorities had established procedures designed to ensure delivery of packages to inmates and to minimize chances of loss. *Id.* at 530, 101 S.Ct. at 1910, 68 L.Ed.2d at 425. The packages were lost because prison employees negligently failed to follow these procedures. If, however, prison regulations had authorized prison employees to dispose summarily of packages addressed to inmates, then any loss occasioned by employees acting pursuant to those regulations would have constituted a due process violation, actionable under section 1983, regardless of state postdeprivation remedies.

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which involved a claim brought under the fourth amendment, the Supreme Court held that plaintiff could maintain a section 1983 action irrespective of any available state remedy. The Court stated:

> Although the legislation [section 1983] was enacted because of the conditions that existed in the South at that time, it is cast in general language and is as applicable to Illinois as it is to the States whose names were mentioned over and again in the debates. *It is no answer that the State has a law which if enforced would give relief.* The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in federal court.

*Id.* at 183, 81 S.Ct. at 482, 5 L.Ed.2d at 502–03. (Emphasis added.)

The Court in *Parratt*, which applied to claims of an alleged denial of due process, clearly distinguished that case from one such as *Monroe* where plaintiff's fourth amendment rights had been violated by stating:

> The only deprivation respondent alleges in his complaint is that "his rights under the Fourteenth Amendment of the Constitution of the United States were violated. That he was deprived of his property and Due Process of Law." App 8. As such, respondent's claims differ from the claims which were before us in *Monroe v. Pape, supra*, which involved violations of the Fourth Amendment, and the claims presented in *Estelle v. Gam-*

*ble*, 429 US 97, 50 L Ed 2d 251, 97 S Ct 285 (1976), which involved alleged violation of the Eighth Amendment.... Respondent here refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment simpliciter.

*Parratt*, 451 U.S. at 536, 101 S.Ct. at 1913, 68 L.Ed.2d at 429. Civil rights plaintiffs have not had difficulty getting the federal courts to recognize this distinction.[7]

Thus, to adopt defendants' interpretation would create an irreconcilable tension between *Parratt* and *Monroe*. *Parratt* did not purport to overrule *Monroe*, yet the suggested interpretation of it would have that effect. Until and unless *Monroe* is overruled by the Supreme Court, we believe we are obliged to follow it.

■ We conclude *Parratt* does not apply to bar a section 1983 suit despite the availability of state postdeprivation remedies where the alleged deprivation violates specific Bill of Rights provisions. Such conduct would be actionable under section 1983 irrespective of the procedural protections accompanying it which are afforded by the state.

Plaintiff's claim, therefore, survives *Parratt*. Plaintiff has a substantive right under the fourth amendment to be free from unreasonable searches and seizures. If defendants did indeed violate this right, then it is constitutionally impermissible no matter what type of procedural protections accompany it, and the availability of a postdeprivation state law remedy is no defense to applicability of section 1983.

II. *Attorney fees.* The district court awarded plaintiff attorney fees pursuant to 42 U.S.C. section 1988. That statute provides in part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983,

---

**7.** *See L & H Sanitation v. Lake City Sanitation,* 769 F.2d 517 (8th Cir.1985); *Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir.1984) (eighth amendment); *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871–72 (7th Cir.1983) (fourth amendment); *Brewer v. Blackwell,* 692 F.2d 387, 395 (5th Cir.1982) (*Parratt* does not apply to substantive due process violations); *Duncan v. Poythress,* 657 F.2d 691, 704–05 (5th Cir.1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982) (right to vote).

1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. Section 1988 allows a winning plaintiff who has brought a claim under section 1983 or one of the other expressly delineated statutes to recover attorney fees. *Blessum v. Howard County Board of Supervisors*, 295 N.W.2d 836, 846 (Iowa 1980).

■ Because we have determined that plaintiff properly brought his cause of action under section 1983, we conclude that section 1988 is applicable, and, thus, the district court properly awarded plaintiff reasonable attorney fees against defendants. On appeal, defendants do not contest the amount awarded as district court attorney fees.

Plaintiff also has made application, which is resisted by defendants, for appellate attorney fees under 42 U.S.C. section 1988. Upon due consideration, we conclude plaintiff is entitled to $5,000 in appellate attorney fees to be taxed as costs.

III. *Invasion of privacy claim.* Plaintiff, on cross-appeal, contends that the district court erred in directing a verdict on his false light invasion of privacy claim against defendant Brown. *See* Iowa R. Civ. P. 216, 243. The court reasoned that there was no evidence that defendant Brown had knowledge of the falsity of the published matter or that he acted in reckless disregard of the falsity of it. We affirm the court's ruling directing a verdict for defendant Brown on a ground urged by defendant, but not relied upon by the district court.

Plaintiff's original petition filed June 11, 1981, asserted only claims under 42 U.S.C. section 1983 and common law claims for false imprisonment and false arrest, mali-

cious prosecution, trespass, conversion and interference with prospective business advantage. These claims all arose out of plaintiff's arrest and the search and seizure of property at his residence and business.

On March 13, 1984, however, some three years after the search and seizure and over two years after the original petition was filed, plaintiff moved for leave to amend his petition, Iowa Rule of Civil Procedure 88, to add a count for invasion of privacy. Plaintiff contended that defendant Brown's statements to the news media which were made at the Des Moines police station invaded plaintiff's privacy by holding him out publicly in a false light.[8]

Defendants resisted the motion because the invasion of privacy claim or count was not included in plaintiff's original petition, the incident referred to was distinct in time and nature from the claims stated in the original petition, and the new count substantially changed the issues.

The district court granted plaintiff leave to amend and found that the added tort claim related back to the date of the original petition, so it was not precluded by the Iowa Code section 613A.5 limitation that an action must be commenced within six months unless a written notice of claim has been presented to the municipality within sixty days after the alleged wrong. Iowa R. Civ. P. 89. The amended petition clearly was filed after the time for bringing suit had expired, so unless this count of the amended petition relates back under Iowa Rule of Civil Procedure 89, it is time-barred.

Iowa Rule of Civil Procedure 88 provides that leave to amend a petition should be freely given when justice so requires. It is within the court's discretion as to whether an amendment should be allowed, and the court's decision will be reversed only if there is a clear abuse of that discretion.

---

**8.** We have long recognized this common law tort and have adopted the elements of false light invasion of privacy as set forth in the Restatement (Second) of Torts § 652E (1977). A claim for false light invasion of privacy is based upon an untruthful publication which places a person

before the public in a manner that would be highly offensive to a reasonable person. *See Anderson v. Low Rent Housing Commission*, 304 N.W.2d 239, 248 (Iowa), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1981).

*Freeman v. Bonnes Trucking, Inc.,* 337 N.W.2d 871, 878 (Iowa 1983). Rule 89 also governs amendments to pleadings and provides in pertinent part that "[w]henever the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

At issue here is whether plaintiff's invasion of privacy claim arose out of the same "conduct, transaction or occurrence" as the section 1983 constitutional rights deprivation claim and the original common law tort actions alleged in the 1981 petition. We believe it did not. The evidence showed, as defendants contended before the amendment was allowed, that Brown's statements to the media were made in a separate incident at the police station at a time *after* the execution of the search warrants at plaintiff's home and business place and the other Des Moines residence were completed. The "news media" incident was not referred to in plaintiff's 1981 petition.

■ An amendment should not be allowed if it would substantially change the issues in the case. *Ackerman v. Lauver,* 242 N.W.2d 342, 345 (Iowa 1976). The court also must consider other factors such as whether the non-amending party would be prejudiced. *See Farmers Insurance Group v. Merryweather,* 214 N.W.2d 184, 188–89 (Iowa 1974).

■ The amended petition significantly expanded the scope of the litigation. Events and conversations occurring after the search warrant was obtained and executed, having nothing to do with the validity of the warrant or the scope of the search, were brought into play and became relevant. The newspersons who covered the story were unable to remember three years after the event what defendant Brown told them that served as the basis of their news stories.

This constitutes unfair surprise and prejudice. In this case, there was nothing in the original petition indicating plaintiff was concerned with or was making a claim about defendant Brown's motives or conduct *after* the search. The effects of the passage of time were particularly evident in witnesses' testimony at trial concerning the invasion of privacy claim.

Several federal cases have reached a similar result under Federal Rule of Civil Procedure 15(c) which is identical to our rule 89. *See Fuller v. Marx,* 724 F.2d 717, 720–21 (8th Cir.1984) (amendment to add count of intentional infliction of emotional harm to original complaint alleging negligence in the performance of an autopsy did not relate back to the original complaint); *Barnes v. Callaghan & Co.,* 559 F.2d 1102, 1105–06 (7th Cir.1977) (amendment to add cause of action for slander did not relate back to original complaint alleging cause of action for sex discrimination under 42 U.S.C. § 2003–2(a)(1) and breach of contract).

For these reasons, we affirm the district court in directing a verdict on the issue of plaintiff's invasion of privacy claim.

IV. *Punitive damages.* Plaintiff also asserts on cross-appeal that the district court improperly directed a verdict in favor of defendants Brown and Bedford on the issue of punitive damages. Plaintiff does not appeal this ruling as to defendant City of Des Moines. Because we have concluded that the district court was correct in directing a verdict on plaintiff's false light invasion of privacy claim, we only consider the award of punitive damages on the section 1983 constitutional claims. The jury awarded punitive damages to plaintiff on the section 1983 claim against defendant Brown alleging that he made material misrepresentations in obtaining the search warrant and against defendant Bedford on the grounds that he exceeded the scope of the search warrant. We will consider each defendant separately.

■ A. *Defendant Nick Brown.* In order to properly award punitive damages, defendant Brown had to have been motivated by evil motive or intent or reckless or callous indifference to plaintiff's constitutional rights. *See Smith v. Wade,* 461 U.S.

30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632, 651 (1983). We conclude there was no substantial evidence sufficient to satisfy this standard and that the district court properly directed a verdict on this issue as to defendant Brown.

The record shows that Brown did not sign the application for search warrant, although he provided some of the information for it. He had reasonable cause to believe the information he furnished was accurate. Officer Schaffer signed the application, and an assistant county attorney reviewed and approved the application prior to its submission to the court. Further, Brown did not personally know the plaintiff. The warrant was merely one of a series that were issued as a part of the sting operation. Plaintiff was treated no differently from any of the other suspects in the undercover operation.

Therefore, we find no error as to this assignment.

B. *Defendant Larry Bedford.* The jury also returned a verdict against defendant Bedford on the section 1983 constitutional claim of exceeding the scope of the search warrant and awarded punitive damages. We must examine the record to determine if there is substantial evidence that Bedford was motivated by evil motive or intent or reckless or callous indifference to plaintiff's constitutional rights. *Id.* at 56, 103 S.Ct. at 1625, 75 L.Ed.2d at 651.

The search warrant authorized defendants to search for and seize certain specified items such as shotguns, a handgun and a TV set. In addition, defendants were authorized to seize property obtained in violation of the law, property the possession of which is illegal, property used or possessed with the intent to be used as a means of committing a public offense or concealed with the intent to prevent an offense from being discovered, or property relevant and material as evidence in a criminal prosecution. *See State v. Hamilton,* 236 N.W.2d 325, 329 (Iowa 1975).

The record shows that Bedford was in charge of the execution of the search warrant at the Willson Auto Body Shop. The warrant that he was executing allowed him to search for specific items listed on it. Although he did not find the listed items, it appears that he took several pieces of property from the shop down to the police station where it later could be determined if the property was stolen. He had no reasonable basis to believe that most of this property was stolen or contraband. Basically, the only pieces of property from the auto body shop that Bedford left behind were those items that were too heavy to lift into the truck to be transported to the police station. The record also indicates that he searched areas of the shop where the items for which he was authorized to search could not have been located. Bedford's method of seizing property at best can be characterized as a "take now and check later" type of an operation.

Therefore, we conclude that there was substantial evidence from which the jury could determine that defendant Bedford exceeded the scope of the search warrant and had a reckless or callous indifference to plaintiff's constitutional rights. The district court erred in directing a verdict on this issue as to defendant Bedford.

V. *Disposition.* As to defendants' appeal, we affirm the conclusion of the district court that 42 U.S.C. section 1983 controls and provides an actionable independent remedy for the deprivation of plaintiff's constitutional rights. Accordingly, district court attorney fees properly were awarded to plaintiff under 42 U.S.C. section 1988. On appeal, we conclude plaintiff is entitled to $5,000 in appellate attorney fees.

On plaintiff's cross-appeal, we affirm the district court's directing of a verdict against plaintiff on the issues of the invasion of privacy claim and the award of punitive damages against defendant Brown. We reverse the district court's directing of a verdict on the issue of punitive damages against defendant Bedford.

Therefore, we affirm the present judgment against defendant Brown and the City of Des Moines under section 1983 for

$500 compensatory damages in connection with the application for the search warrant. We affirm the present judgment against defendant Bedford and the City of Des Moines under section 1983 for $5,150 compensatory damages in connection with the execution of the search warrant. We reverse and remand with directions that judgment be entered in favor of plaintiff against defendant Bedford for $1,000 punitive damages in connection with the execution of the search warrant. We affirm the judgment against the City of Des Moines for $258.50 on the conversion count. We also affirm the district court judgment concerning attorney fees and for interest and costs as provided by law. Plaintiff is awarded $5,000 attorney fees as costs in connection with this appeal. *See Blessum*, 295 N.W.2d at 846.

Plaintiff also has filed a motion in this court to tax the cost of preparing the trial transcript and to impose double costs on defendants. Rule of Appellate Procedure 10(b) provides that the transcript cost be taxed in the district court. Plaintiff's motion is overruled. Costs in this court are taxed one-fourth to plaintiff and three-fourths to defendants.

AFFIRMED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON PLAINTIFF'S CROSS-APPEAL; AND REMANDED.