**Charles R. KISH, Jr., Plaintiff,**

v.

**IOWA CENTRAL COMMUNITY COLLEGE, Defendant.**

No. C 00–3016–MWB.

United States District Court, N.D. Iowa, Central Division.

May 29, 2001.

---

MEMORANDUM OPINION AND OR-
DER REGARDING DEFEN-
DANT'S MOTION FOR SUMMARY
JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................1086
 A. Factual Background ......................................1086
 B. Procedural Background ..................................1090
II. LEGAL ANALYSIS ...........................................1091
 A. Standards For Summary Judgment .....................1091
 1. Requirements of Rule 56 .........................1091
 2. The parties' burdens ............................1091
 B. Breach of Contract .....................................1092
 1. Arguments of the parties ........................1092
 2. Elements of the claims ..........................1093
 3. Analysis of the record ..........................1093
 C. Due Process ............................................1095
 1. Arguments of the parties ........................1095
 2. Due process and property interests ..............1096
 3. Analysis of the record ..........................1097
 D. "False Light" Claim ...................................1099
 1. ' Arguments of the parties ........................1099
 2. Elements of the claim ...........................1099
 3. Analysis of the record ..........................1100
III. CONCLUSION ...............................................1100

Claiming that he was wrongfully deprived of his positions as head women's basketball coach and coordinator of student retention with a community college, the plaintiff has asserted claims of breach of contract, violation of due process, and tortiously placing him in a "false light" in public communications. The defendant community college, however, has moved for summary judgment on all of the plaintiff's claims contending, *inter alia,* that the plaintiff abandoned his positions after he was suspended *with pay* from the coaching position and agreed to continue in his position as retention coordinator for the remaining term of his contract. Although there are clearly disputes between the parties as to precisely what happened to terminate the plaintiff's career at the community college, the question before the court is whether any of these disputes "might affect the outcome of the suit under the governing law," such that they "properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation of the undisputed and disputed facts of the case. Rather, the court will present the nucleus of undisputed facts and enough of the disputed facts to put in context the plaintiff's claims and the defendant's motion for summary judgment. The court will return to specific

factual contentions in more detail, where necessary, in its analysis of the various portions of the defendant's motion for summary judgment.

Plaintiff Charles R. (Chad) Kish entered into a written "Extracurricular Contract With Coach" with defendant Iowa Central Community College (Iowa Central) on September 14, 1999. Iowa Central is a community college in Fort Dodge, Iowa, which is organized pursuant to IOWA CODE CH. 260C. Under the Extracurricular Contract With Coach, Kish was to perform the duties of Women's Basketball Coach from September 7, 1999, for a period of nine months and eighteen days, and such other time as might be assigned to coach post-season or other related duties. The contract provided, among other things, as follows: "This contract is not continuing in nature and may be terminated at the pleasure of the Board [of Iowa Central]." Defendant's Appendix at 10, Exhibit H, Extracurricular Contract With Coach, numbered ¶ 1. On September 14, 1999, Vice President of Financial Affairs Charles D. Peterson also advised Kish in writing that his employment as Retention Coordinator for the remainder of the 1999–2000 college year had been authorized, presumably by Iowa Central's Board of Trustees. *See* Defendant's Appendix at 11, Exhibit I, Letter of September 14, 1999, from Peterson to Kish. The particulars of this position, as stated in Vice President Peterson's letter, included the following:

The period of your employment shall begin on September 7, 1999, and continue through June 30, 2000. Your employment, however, may be terminated at any time if there is a need to reduce staff because of the uncertainties of funding, reduction in enrollment, discontinuance of programs or services, or for other just cause.

*Id.* Kish accepted this position as well as the head coaching job. Kish's combined salary for both positions was approximately $31,000. Kish worked approximately thirty hours per week at the Retention Coordinator job and that position provided almost two-thirds of his salary and benefits.

Kish's coaching career at Iowa Central apparently did not begin smoothly. Dr. Paxton, the President of Iowa Central, first raised concerns with Kish's coaching during a meeting with Kish on September 23, 1999. Complaints and comments critical of the women's basketball program, Kish's coaching, and practice schedules continued during the fall of 1999. Tom Beneke, the Vice President of Iowa Central, had another meeting with Kish concerning these complaints on October 11, 1999. Beneke and/or Paxton held meetings with team members on October 11th, 12th, and 13th. Eventually, on Thursday, November 4, 1999, Kish contends that he was terminated from all duties at Iowa Central during a meeting with Beneke and Dennis Pilcher, the Athletic Director for Iowa Central. Indeed, Kish contends that Beneke told him to clean all of his personal belongings out of his coach's and Retention Coordinator's offices, not to contact any players, and not to return to the campus to collect forgotten personal belongings except after hours or on weekends to minimize contact with players or other students.

Kish contends that, on November 4, 1999, Beneke read him his notice of termination from prepared notes and that the statement of his termination was very similar to the statement of reasons for terminating him later published in an article in the Fort Dodge *Messenger* newspaper. That article, published on November 5, 1999, stated the following, in pertinent part:

"The Iowa Central administration has released Chad Kish from all duties with the college due to the fact the women's basketball program was not going in the direction the college felt it needed to go," Pilcher said.

"Each program, whether it is athletics, music, or academia is looked at and evaluated very closely and at this time the women's program was not going in the direction the administration felt it needed to go."

Pilcher declined to elaborate beyond the prepared statement on why Kish was on the job barely two months then dismissed a week before the Tritons open the season in their own Tip–Off Classic Nov. 12.

Plaintiff's Appendix, Exhibit 3.

Kish did not work from the end of the meeting on November 4, 1999, through November 9, 1999. However, he received telephone calls from Beneke and Paxton on Monday and Tuesday, November 8th and 9th, which Kish contends involved Beneke's and Paxton's requests that he resign, with the suggestion that it would be to his advantage to avoid the necessity of placing reasons for his dismissal before the Board of Trustees at a meeting to confirm his termination. On November 9, 1999, Kish's attorney wrote a letter to the Equity Coordinator for Iowa Central requesting assistance in forwarding to the proper persons Kish's request "for an opportunity to be heard before th[e] decision [to terminate his coaching contract] becomes final." Plaintiff's Appendix, Exhibit 4. However, that letter reflects that, on November 9, 1999, Beneke called Kish to "reinstat[e] him to the Retention Coordinator position." *Id.*

The parties agree that, on November 9, 1999, Beneke called Kish to tell him to report to work the following morning and to attend a meeting some time that day.

At the meeting on November 10, 1999, Kish met with Beneke and Paxton. In the course of the meeting and in a letter dated November 10, 1999, Beneke advised Kish that Iowa Central was "indefinitely suspending you with pay as Head Women's Basketball Coach." Defendant's Appendix at 12, Exhibit N, Letter of November 10, 1999, from Beneke to Kish. The letter then detailed Iowa Central's reasons for the suspension, reiterated that Kish was "suspended indefinitely, with pay, as Head Women's Basketball Coach," and that he was "to have no contact with any member of the women's basketball team," but that he was "to perform [his] duties as Retention Coordinator." *Id.* Kish testified in deposition that he "went along with" this arrangement, although he did not "agree" to it. *See* Defendant's Statement of Undisputed Facts at ¶ 23; Kish Deposition at 159 (Defendant's Appendix at 49).

Kish worked at his job as Retention Coordinator Wednesday through Friday, November 10th through the 12th. However, on Saturday, November 13, 1999, Kish wrote a letter to Beneke, which stated the following:

> With the termination of my basketball duties on November 4, 1999, my position at the college has changed drastically. The realignment of my job duties, and the time allocations, has changed my outlook.
>
> I will not be able to accept the new, full-time position of Retention Coordinator as presented on November 10, 1999.

Plaintiff's Appendix, Exhibit 5.

Beneke responded to this letter by letter dated November 16, 1999, disputing, among other things, that there had been any "realignment" of Kish's job duties, when it was Iowa Central's contention that neither the job of Retention Coordinator nor its time responsibilities had changed.

Defendant's Appendix at 13–14, Exhibit R, Letter of November 16, 1999, from Beneke to Kish; *see also* Plaintiff's Appendix, Exhibit 6. In his letter, Beneke also disputed Kish's contention that he had been asked to accept a "new" full-time position as Retention Coordinator, when it was Iowa Central's contention that "[t]he position is the same full-time position as it was when you entered into your agreement with the College in August, 1999," and that Kish had agreed to continue in that position during his meeting with Beneke and Paxton on November 10, 1999. *Id.* Beneke's letter concluded as follows:

> Yesterday, I was informed that you were absent from your work. With your absence and coupled with the erroneous statements contained in your letter dated November 13, 1999, we want you to have the opportunity to correct your absence and continue employment with the College. Upon receiving this letter, you will have five (5) work days to return to work and to resume performance of the Retention Coordinator job. If you do not return to work by that time, the College will consider your action as your voluntary resignation from employment with the College.

> At this time, there will not be any loss of pay for your absence if you resume your job duties within the time described above. The Retention Coordinator job is your job to perform and it is a very important position with our College. We need you to perform the responsibilities that go with that position consistent with your letter of agreement. If you have any questions, please contact me[.]

Defendant's Appendix at 14. Kish acknowledges receiving this letter.

Also on November 16, 1999, Paxton wrote Kish's attorney a letter in response to the attorney's letter to the Equity Coordinator "clarify[ing] ... that Chad Kish has not been terminated/discharged from his employment at the College," but had been suspended with pay from his coaching responsibilities. Plaintiff's Exhibit 7, Letter of November 16, 1999, from Paxton to Parker. In that letter, Paxton offered to have a meeting with Kish "at any time convenient with him to clarify any concerns he may have with regard to his suspension with pay as Head Women's Basketball Coach." *Id.* Paxton's letter also reiterated that Kish had been told during the November 10, 1999, meeting that he was to continue his responsibilities as Retention Coordinator. *Id.* The letter from Paxton reiterated the statement in Beneke's letter that, if Kish returned to work as Retention Coordinator within five days of the date of the letter, he would suffer no loss of pay. *Id.* However, the letter continued, if he did not return to work within the time specified, Iowa Central would "consider his action as his voluntary resignation from employment with the College." *Id.*

Kish did not contact Beneke or anyone else at Iowa Central about returning to work, did not return to work, and instead moved to Missouri shortly after sending Beneke his letter of November 13, 1999. Kish acknowledges receiving another letter dated December 1, 1999, from Iowa Central, which noted that, because he had failed to return to work within the time provided, Iowa Central was accepting his voluntary resignation.[1] Kish lost no pay or benefits until he failed to return to work

---

1. The letter itself does not appear in the summary judgment record, but its contents are detailed in Defendant's Statement Of Undisputed Facts, ¶ 37, and Kish's acknowledgment that the letter indicated Iowa Central had accepted his voluntary resignation appears in his deposition, page 183, Defendant's Appendix at 65.

within the time provided in the November 16, 1999, letters from Beneke and Paxton.

### B. Procedural Background

Kish filed the present action against Iowa Central on March 6, 2000, seeking damages for breach of employment contracts and placing him in a false light, and declaratory relief and damages for violation of his due process rights. More specifically, Kish's First Cause of Action alleges that Iowa Central breached his Extracurricular Contract With Coach by terminating him. His Second Cause of Action alleges that Iowa Central breached his contract as Retention Coordinator by terminating him. His Third Cause of Action, pursuant to 42 U.S.C. § 1983, alleges that Iowa Central failed to provide him with equal protection and due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution by failing to afford him the procedural requirements of a post-deprivation hearing, thus depriving him of a property interest in his employment without due process of law.[2] Kish's Fourth Cause of Action alleges that Iowa Central placed him in a false light before the public by asserting in a press release to the Fort Dodge *Messenger* and to the public that, " 'The Iowa Central administration has released Chad Kish from all duties with the college due to the fact the women's basketball program was not going in the direction the college felt it needed to go.' " Complaint, Fourth Cause of Action, ¶ 34. Kish contends that this press release wrongly placed him before the public in a manner that is highly offensive to a reasonable person. Finally, Kish's Fifth Cause of Action alleges "wrongful discharge" from his positions as Head Women's Basketball Coach and Retention Coordinator, although the nature of the "wrongfulness" of discharge is simply alleged to be that Iowa Central breached the contracts by discharging Kish. As relief, Kish seeks judgment declaring that Iowa Central's acts violated the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution; compensatory and consequential damages for breaches of his basketball coaching and retention coordinator contracts; compensatory damages for placing him in a false light; compensatory damages for wrongful discharge; punitive damages; attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs, prejudgment interest, and such other relief as the court deems just and proper. Iowa Central answered Kish's Complaint on April 6, 2000, denying Kish's claims and asserting affirmative defenses, including Kish's breach and voluntary termination of his employment contracts. Trial in this matter is currently set for August 20, 2001.

However, Iowa Central has moved for summary judgment on all of Kish's claims. Kish resisted the motion for summary judgment on May 8, 2001, and the court heard oral arguments on the motion on May 23, 2001. At the oral arguments, plaintiff Charles R. (Chad) Kish, Jr., was represented by Blake Parker of the Blake Parker Law Office in Fort Dodge, Iowa. Defendant Iowa Central Community College was represented by Stephen G. Kersten of Kersten Brownlee Hendricks, L.L.P., also in Fort Dodge, Iowa. With the arguments of the parties fully submitted, the court turns to its consideration of the motion for summary judgment under the applicable legal standards.

---

**2.** It is unclear in what respect Kish alleges a violation of his constitutional right to equal protection, and Kish has not since clarified that question in response to Iowa Central's motion for summary judgment.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.2000), *cert. denied*, ⎯ U.S. ⎯⎯, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact*

*and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v.. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party, here Iowa Central, bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston*, 133 F.3d at 1107; *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule 56(c)*, its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct.

1348. Rather, the party opposing summary judgment, here Kish, is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

With these standards in mind, the court will turn to consideration of Iowa Central's contention that it is entitled to summary judgment on each of Kish's claims.

### B. Breach of Contract

#### 1. Arguments of the parties

Iowa Central contends, and Kish does not dispute, that Kish's "wrongful discharge" claim is merely duplicative of his breach-of-contract claims. The court's reading of the causes of action in Kish's complaint is the same.[3] Therefore, if Iowa

---

**3.** The Iowa Supreme Court recently explained the tort of wrongful discharge as follows:

We have identified the elements of an action to recover damages for discharge in violation of public policy to require the employee to establish (1) engagement in a protected activity; (2) discharge; and (3) a causal connection between the conduct and the discharge. *Teachout v. Forest City Community Sch. Dist.,* 584 N.W.2d 296, 299 (Iowa 1998).

These elements properly identify the tort of wrongful discharge when a protected activity has been recognized through the existence of an underlying public policy which is undermined when an employee is discharged from employment for engaging in the activity. *See Tullis v. Merrill,* 584 N.W.2d 236, 239 (Iowa 1998) (public policy in favor of permitting employees to make demand for wages due gives rise to an action for wrongful discharge for making a demand for wages); *Teachout,* 584 N.W.2d at 299 (public policy of this state in favor of reporting suspected child abuse gives rise to an action for wrongful discharge for reporting or intending to report child abuse); *Lara v. Thomas,* 512 N.W.2d 777, 782 (Iowa 1994) (public policy of this state in favor of permitting employees to seek unemployment compensation gives rise to an action for wrongful discharge for seeking partial unemployment benefits); *Springer [v. Weeks & Leo Co.],* 429 N.W.2d [558,] 560 [(Iowa 1988)] (public policy of this state in favor of permitting employees to seek workers' compensation for work-related injuries gives rise to an action for wrongful discharge for asserting a right to workers' compensation benefits). However, when we have not previously identified a particular public policy to support an action, the employee must first identify a clear public policy which would be adversely impacted if dismissal resulted from the conduct engaged in by the employee. *See Yockey v. State,* 540 N.W.2d 418, 420–21 (Iowa 1995) (the public policy in favor of permitting employees to seek workers' compensation benefits not jeopardized by termination from employment for missing work following injury); *Borschel v. City of Perry,* 512 N.W.2d 565, 567 (Iowa 1994) (no public policy in favor of presumption of innocence in work place to give rise to an action for wrongful discharge for conduct which resulted in criminal charges); *French [v. Foods, Inc.],* 495 N.W.2d [768,]

Central is entitled to summary judgment on either or both of Kish's breach-of-contract claims, in his First and Second Causes of Action, it is also entitled, to that extent, to summary judgment on Kish's Fifth Cause of Action for "wrongful discharge."

As to the breach-of-contract claims, Iowa Central contends that, even if Kish was told he was "terminated" on November 4, 1999, he was told on November 10, 1999, that he was only suspended, with pay, from his coaching position and that he would continue in his job as Retention Coordinator, and that Kish lost no pay between November 4th and November 10th. Iowa Central contends, however, that after Kish accepted this proposal and continued to work and accept pay for another few days, he voluntarily left both positions and refused to return to work despite Iowa Central's repeated requests that he do so. Iowa Central contends that Kish's voluntary abandonment of his positions entitled Iowa Central to rescind Kish's employment contracts.

Kish, however, contends that the key question in this case is whether or not he was terminated, and that, on this key question, he has generated genuine issues of material fact that he was terminated on November 4, 1999, which he contends severed his employment relationship with Iowa Central. He contends that reinstatement can only occur if the employer and employee reach a reinstatement agreement, but that it is clear that Kish's coaching contract was terminated and Iowa Central never offered to reinstate it. Kish contends that he did not "abandon" employment with Iowa Central as head women's basketball coach, because he was told

that he could not show up to work in that position, and, indeed, was told that he could have no further contact with the basketball players.

### 2. Elements of the claims

 In order to establish a claim of breach of contract, a party must prove (1) the existence of a contract between the parties; (2) the terms and conditions of the contract; (3) that the plaintiff performed all the terms and conditions required under the contract; (4) that the defendant breached the contract in some particular way; and (5) that the plaintiff has suffered damages as a result of the breach. *See, e.g., Molo Oil Co. v. River City Ford Truck Sales, Inc.,* 578 N.W.2d 222, 224 (Iowa 1998). A party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract. *Id.* Kish contends that Iowa Central breached the contract by terminating him. "In general, employment relationships are terminated by resignation or discharge. An employee voluntarily severs the relationship by resigning; the employer does so by discharging the employee." *Balmer v. Hawkeye Steel,* 604 N.W.2d 639, 641 (Iowa 2000) (citations omitted).

### 3. Analysis of the record

There is certainly a dispute of fact as to whether or not Iowa Central discharged Kish from his coaching and retention coordinator contracts on November 4, 1999. However, that dispute is not one that "might affect the outcome of the suit under the governing law," such that it "properly preclude[s] the entry of summary judgment" on Kish's breach-of-contract

---

771–72 [(Iowa 1993)] (presumption of innocence not an actual public policy).
*Fitzgerald v. Salsbury Chem., Inc.,* 613 N.W.2d 275, 281–82 (Iowa 2000). Kish's allegations

in support of his "wrongful discharge" claim do not allege the elements of such a cause of action.

claims. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. This is so, first, because it is undisputed that Iowa Central offered to reinstate Kish to the retention coordinator position on November 10, 1999, *see* Defendant's Appendix at 48 (Kish Deposition at 158); *see also* Defendant's Appendix at 12, Exhibit N, Letter of November 10, 1999, from Beneke to Kish (confirming that Kish was suspended with pay from his coaching position but was to continue in his retention coordinator position); that Kish accepted (or "went along with") reinstatement to the retention coordinator position at the meeting on November 10th, *see id.* at 49 (Kish Deposition at 159); and that Kish in fact worked in that position on November 11th and 12th. *See id.* at 50 (Kish Deposition at 162).

Indeed, Kish does not contend that he was not reinstated to the retention coordinator position, although he does contend that "[t]he *coaching* contract was terminated solely by the action of the college. They never offered that *it* be reinstated." Plaintiff's Brief In Resistance To Defendant's Motion For Summary Judgment at 7 (Plaintiff's Brief) (emphasis added). Kish does not dispute that, on November 10, 1999, Iowa Central proposed that he would be suspended with pay from his coaching position—thus rescinding his termination from that position, if Iowa Central had in fact terminated Kish's coaching contract on November 4th. *See* Defendant's Appendix at 47–48 (Kish Deposition at 157–58); *see also* Defendant's Appendix at 12, Exhibit N, Letter of November 10, 1999, from Beneke to Kish (confirming that Kish was suspended with pay from his coaching position but was to continue in his retention coordinator position). Kish also testified in deposition that he "went along with" the suspension:

Q. Would it be fair to say then, Mr. Kish, as of November 10th you had not lost any pay. You were advised that you would continue to receive pay, that you were no longer to act as head basketball coach, and you were suspended from that position with pay and that you were to continue with your duties as retention coordinator?

A. Correct.

Q. Did you agree to that?

A. Never—I mean, I guess.

Q. You did, didn't you?

A. I went along with my duties.

Defendant's Appendix at 48–49 (Kish Deposition at 158–59). Whether Kish's acceptance of his suspension with pay from his coaching position is considered a "reinstatement" with a suspension, or a "substituted" contract, under which Iowa Central accepted Kish's suspension with pay in satisfaction of his existing coaching duties under his Extracurricular Contract With Coach, *see* RESTATEMENT (SECOND) OF CONTRACTS § 279(1) ("A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty."), it is undisputed that Kish accepted this arrangement, and performed under it on November 11th and 12th.

█ It is also undisputed that Kish then voluntarily quit his positions as retention coordinator and suspended coach on November 13, 1999, when he sent Iowa Central a letter stating that he would not accept the "new" position as retention coordinator, Plaintiff's Appendix, Exhibit 5, and failed to return to work in response to Iowa Central's November 16, 1999, requests that he do so within five days or be deemed to have voluntarily quit his employment with Iowa Central. *See* Defendant's Appendix at 13–14, Exhibit R, Letter of November 16, 1999, from Beneke to Kish; Plaintiff's Exhibit 7, Letter of November 16, 1999, from Paxton to Parker; *see also* Defendant's Appendix at 50 (Kish Deposition at 164) (acknowledging that

Kish left and was not told to leave by anyone at Iowa Central on November 13, 1999). Although Kish argues that he left, because he was not doing the coaching job he had been hired to do, he does not argue that conduct by Iowa Central somehow constructively discharged him from his positions. Thus, on the record presented, it is undisputed that Kish's positions at Iowa Central were terminated because Kish resigned. *See Balmer,* 604 N.W.2d at 641 ("In general, employment relationships are terminated by resignation or discharge. An employee voluntarily severs the relationship by resigning[.]").

■ Moreover, even if Kish can generate a genuine issue of material fact that Iowa Central terminated his coaching contract, and never reinstated him to that contract, albeit with a suspension, or substituted a contract suspending performance of his coaching duties, he cannot generate a genuine issue of material fact that Iowa Central breached his coaching contract by discharging him. This is so, because the contract itself expressly provided that "[t]his contract is not continuing in nature and may be terminated at the pleasure of the Board [of Iowa Central]." Defendant's Appendix at 10, Exhibit H, Extracurricular Contract With Coach, numbered ¶ 1. Thus, the contract could be terminated by Iowa Central without cause. Kish contends that he understood this term to mean that his coaching contract might not be renewed. However, Iowa Central points out that the contract also provides "[t]hat *if the Coach is discharged* or released by mutual agreement *before completion of the term,* final settlement shall be made so that the total amount which the Coach shall have received shall be an amount equal to the product of the number of days of service multiplied by the amount considered as pay for one day of service." Defendant's Appendix, Exhib-

it H, Extracurricular Contract With Coach, numbered ¶ 1 (emphasis added). Thus, as Iowa Central argues, Kish cannot establish a breach of contract based on his discharge where the contract provided for discharge at the pleasure of the Board of Trustees, *i.e.,* discharge for any reason or no reason at all, subject only to "final settlement" at a per diem rate for days of service provided.

On this record, Kish cannot meet his burden to generate a genuine issue of material fact on the essential element that Iowa Central breached a term of either of his contracts of employment. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re TMJ Implants,* 113 F.3d at 1492. Therefore, Iowa Central is entitled to summary judgment on Kish's First, Second, and Fifth Causes of Action.

### C. Due Process

#### 1. Arguments of the parties

Iowa Central contends that Kish's due process claim must be dismissed on any of several grounds. First, Iowa Central contends that it is entitled to Eleventh Amendment immunity, as an arm of the State of Iowa. Iowa Central also contends that Kish has no property right in his employment as a coach, where his coaching contract stated that it was not "continuing" in nature and that he served "at the pleasure" of the Board. Furthermore, Iowa Central contends that Kish has not been deprived of any such property right, if it existed, where he was suspended *with pay* from the coaching job and told to continue in his job as Retention Coordinator. Finally, Iowa Central contends that Kish never requested a post-deprivation hearing

and did not take advantage of opportunities he was given by Iowa Central to review his suspension as head women's basketball coach.

Kish, however, disputes each of these contentions. Kish contends that Iowa Central has not pleaded an affirmative defense of Eleventh Amendment immunity as required to assert such a defense. Even if the defense had been properly pleaded, Kish contends that Iowa Central would not be entitled to summary judgment on the basis of such immunity, because there are genuine issues of material fact as to whether or not Iowa Central obtains enough of its operating funds from state coffers, and whether or not the state exercises sufficient control over Iowa Central, to confer such immunity. Kish also contends that both of his contracts were sufficient to create cognizable property rights entitled to due process protection. He contends further that he was not suspended, but terminated, as women's basketball coach, which impinged upon that property right. He also contends that he requested due process review via the letter from his counsel to the Equity Coordinator of Iowa Central, but that his request was ignored.

### 2. Due process and property interests

■■ The court concludes that it need not address the parties' contentions concerning Eleventh Amendment immunity, because Kish's due process claim otherwise fails as a matter of law. Due process claims are generally subjected to a two-part analysis: (1) is the asserted interest protected by the due process clause; and if so, (2) what process is due? *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 690 (8th Cir.), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999). As this court has previously explained,

When a public employee asserts a protected property interest in his or her employment, the public employee must show that the protected property interest is derived from a source such as state law, which requires a showing that the employee could have been fired only for good cause. *Spitzmiller [v. Hawkins]*, 183 F.3d [912,] 915–16 [(8th Cir. 1999)]; *Johnson [v. City of West Memphis]*, 113 F.3d [842,] 843 [(8th Cir. 1997)] ("For a property interest to exist, the public employee must have a legitimate claim of entitlement to continued employment."). While a public employee with a protected property interest in continued employment is entitled to due process before termination, *see Graning [v. Sherburne County]*, 172 F.3d [611,] 616 [(8th Cir.1999)]; *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 690 (8th Cir.1998), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999), where the claimant can show only that he or she was an at-will employee, the claimant lacks the necessary property interest in his or her employment. *Spitzmiller*, 183 F.3d at 916; *Johnson*, 113 F.3d at 843 (the plaintiff "lacked a property interest because he was not entitled to continued employment as the utility commission's general manager," but instead "was an at-will employee who could be terminated at any time without cause").

*Randall v. Buena Vista County Hosp.*, 75 F.Supp.2d 946, 953–54 (N.D.Iowa 1999). Similarly, the Eighth Circuit Court of Appeals recently explained,

To succeed on a procedural due process claim, [a public employee] must establish that he had a constitutionally protected property interest, that is, a "legitimate claim of entitlement" to con-

tinued employment by the [public entity]. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If a public employee may not be terminated except for good cause, that is a property interest entitled to due process protection. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). On the other hand, an at-will probationary employee does not have a protected property interest in continued public employment. *See Tautfest v. City of Lincoln*, 742 F.2d 477, 480 (8th Cir. 1984).

*Somers v. City of Minneapolis*, 245 F.3d 782, 785 (8th Cir.2001).[4] Recognizing these same standards, the Eighth Circuit Court of Appeals has concluded that language providing that a public employee serves "at the pleasure" of an administrative board or executive is "inconsistent with the ... conclusion that [the employee] could only be removed for cause," and thus the employee had no protected property interest. *See Buchholz v. Aldaya*, 210 F.3d 862, 866 (8th Cir.2000).

### 3. Analysis of the record

■ Under these standards, as a matter of law, Kish had no cognizable property interest in his coaching contract. The contract expressly states, "This contract is not continuing in nature and may be terminated at the pleasure of the Board [of Iowa Central]." Defendant's Appendix at

10, Exhibit H, Extracurricular Contract With Coach, numbered ¶ 1. Nor are the authorities cited by Kish to the contrary. He cites *Buchanan v. Little Rock School District of Pulaski County*, 84 F.3d 1035, 1038 (8th Cir.1996), for the broad proposition that a contract may create a property interest, and that, because he had a contract, he had a claim of entitlement to his coaching position, giving rise to a property interest in that position. However, in *Buchanan*, the court held that a school principal had no property interest in assignment as a principal at a particular school, even though her contract designated her "primary duty" as serving as principal of that school, where the contract also provided that she was to "perform services as assigned by Superintendent or Principal," and Arkansas law permitted school boards and superintendents to determine assignments for principals and teachers. *See Buchanan*, 84 F.3d at 1038–39. Thus, *Buchanan* does not stand for the proposition that any public employment contract creates a property interest subject to due process protection.

Moreover, the case on which *Buchanan* relies for the proposition that "[a] contract may create a property interest," *Brockell v. Norton*, 688 F.2d 588, 590–91 (8th Cir. 1982), considerably narrows that proposition by clarifying that "[s]uch a protectable property interest is not an automatic consequence of all public employment." *Brockell*, 688 F.2d at 590. The court explained

---

4. As this court has explained in the past, a public employee may also have a protected liberty interest in employment under certain circumstances:

> [U]nder the applicable law, a public employee's liberty interest, the basis for a due process claim, is impinged when, in connection with the employee's discharge, a government official makes [public] accusations that seriously damage the employee's standing in the community or foreclose other employment opportunities. A public em-

> ployee is [therefore] entitled to notice and a name-clearing hearing when fired under circumstances imposing a stigma on her professional reputation.

> *Mercer v. City of Cedar Rapids*, 104 F.Supp.2d 1130, 1148 (N.D.Iowa 2000) (internal citations and quotation marks omitted). However, Kish has not contended that he has a protected liberty interest arising from a discharge imposing a "stigma" on his professional reputation.

further, "For the purposes of the Fourteenth Amendment, a property interest does not exist unless the employee has a 'legitimate claim of entitlement' to the public job." *Id.* (citing *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). In *Brockell*, the court held that the employee in question failed to establish that his oral contract provided any legitimate expectation of continued employment. *Brockell*, 688 F.2d at 590–91.

Kish's reliance on *Winegar v. Des Moines Independent Community School District*, 20 F.3d 895 (8th Cir.), *cert. denied*, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994), is also misplaced. Kish argues that, in that case, the parties agreed that a teacher who had been suspended for several days, then transferred, had a property interest (as well as a liberty interest) in his employment, citing *Winegar*, 20 F.3d at 899 & n. 4. However, in *Winegar* the court explained the circumstances under which such a property interest arises, as follows:

> Typically, this interest arises from contractual or statutory limitations on the employer's ability to terminate an employee. [*Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) ]. A property interest in employment can also be created by implied contract, arising out of customs, practices, and de facto policies. *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699, 2700, 33 L.Ed.2d 570 (1972).

*Winegar*, 20 F.3d at 899. Whatever the parties may have agreed about the teacher's property interest in his employment in *Winegar*, it is clear that Kish has not demonstrated any contractual or statutory limitations on Iowa Central's ability to terminate his coaching contract, nor has he demonstrated that a protectible property interest arose from any implied contract arising out of customs, practices, or de facto policies. *See id.* Instead, Kish's coaching contract expressly provided to the contrary, by stating, "This contract is not continuing in nature and may be terminated at the pleasure of the Board [of Iowa Central]." Defendant's Appendix at 10, Exhibit H, Extracurricular Contract With Coach, numbered ¶ 1.

■ Because Kish has failed to generate a genuine issue of material fact on the essential element of his due process claim that he had a protectible property interest in his employment as Women's Basketball Coach at Iowa Central, *see Logan*, 455 U.S. at 428, 102 S.Ct. 1148 (first part of the due process analysis is determination of whether or not the plaintiff has a protectible property or liberty interest), Iowa Central is entitled to summary judgment on Kish's due process claim as to that position. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re TMJ Implants*, 113 F.3d at 1492. Iowa Central apparently concedes that Kish had a property interest in his retention coordinator position, and the court notes that, unlike Kish's coaching contract, the retention coordinator position could not be terminated, except under specified conditions, including a "just cause" requirement. *See* Defendant's Appendix at 11, Exhibit I, Letter of September 14, 1999, from Peterson to Kish ("Your employment, however, may be terminated at any time if there is a need to reduce staff because of the uncertainties of funding, reduction in enrollment, discontinuance of programs or services, or for other just cause."). However, Kish cannot maintain his claim of a due process violation as to this position, because he was reinstated to it, with full pay and benefits, agreed to the reinstatement, and worked for two

days after reinstatement, then abandoned the position. In other words, Kish received all the process he was due with regard to his termination from his retention coordinator position, *Logan,* 455 U.S. at 428, 102 S.Ct. 1148 (the second part of the due process analysis, if the employee has a protectible property interest, is to determine what process is due); *Wallin,* 153 F.3d at 690, because he was promptly reinstated with full pay and benefits. A due process hearing could not have provided him with more. Therefore, Iowa Central is entitled to summary judgment on Kish's due process claim in its entirety.

### D. "False Light" Claim

#### 1. Arguments of the parties

Iowa Central contends that, assuming for the sake of argument that there was some "falsity" to its press release regarding Kish's "release" from his positions with Iowa Central, as reported in the Fort Dodge *Messenger* on November 5, 1999—which Iowa Central does not concede—Kish has not established a causal connection between that publication and some damage. Rather, Iowa Central contends, Kish admitted in his deposition and interrogatory answers that Kish has no facts or information that anybody outside of Fort Dodge ever read the article in the paper, and that he has no information, evidence, or facts to support a conclusion that there is a causal connection between the article in the paper and any damage.

In response, Kish instead focuses on the alleged "falsity" of the press release and Iowa Central's alleged reckless disregard of that falsity. To the extent Kish's argument is responsive to the ground on which Iowa Central actually seeks summary judgment on this claim, Kish argues, without citation to any record evidence, that the publication of his "release" from his positions at Iowa Central "has essentially ruined any chance that he has in coaching basketball in the future, without starting over from the bottom." Plaintiff's Brief at 13.

#### 2. Elements of the claim

In *Hill v. Hamilton County Public Hospital,* 71 F.Supp.2d 936 (N.D.Iowa 1999), this court explained the essential elements of a "false light" claim under Iowa law, as follows:

> The Iowa Supreme Court recognizes the common law tort of false light invasion of privacy and has approved the elements for this cause of action as set forth in the RESTATEMENT (SECOND) OF TORTS § 652E. *Willson v. City of Des Moines,* 386 N.W.2d 76, 83 n. 8 (Iowa 1986)[, *cert. denied,* 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986) ]. "A claim for false light invasion of privacy is based upon an untruthful publication which places a person before the public in a manner that would be highly offensive to a reasonable person." *Id.* Specifically, the RESTATEMENT defines the tort of false light as follows:

> **§ 652E. Publicity Placing Person in False Light**

>> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

> RESTATEMENT (SECOND) OF TORTS § 652E.

*Hill,* 71 F.Supp.2d at 952. Although this tort "overlaps the law of defamation," *Winegard v. Larsen,* 260 N.W.2d 816, 823 (Iowa 1977), and requires proof of "untruthfulness," it is not necessary for the plaintiff to prove that he or she was defamed. *Anderson v. Low Rent Housing Comm'n of Muscatine,* 304 N.W.2d 239, 248 (Iowa 1981), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1981). In light of the Iowa Supreme Court's adoption of the principles of invasion of privacy articulated in the RESTATEMENT (SECOND) OF TORTS, this court believes that the applicable standard for damages is also to be found in the RESTATEMENT. Section 652H of the RESTATEMENT (SECOND) OF TORTS defines the damages available for invasion of privacy:

### § 652H. Damages

One who has established a cause of action for invasion of his privacy is entitled to recover damages for

(a) the harm to his interest in privacy resulting from the invasion;

(b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

(c) special damage of which the invasion is a legal cause.

RESTATEMENT (SECOND) OF TORTS § 652H.

### 3. *Analysis of the record*

 Kish's response to the ground on which Iowa Central seeks summary judgment on his "false light" claim is an example of generating, at best, "some metaphysical doubt as to the material facts" that he suffered some damage as a result of any publication that allegedly cast him in a "false light." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Kish has failed, however, to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial," as required by Rule 56(e), to preclude summary judgment. FED.R.CIV.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka,* 122 F.3d at 562; *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325. Indeed, Kish's deposition testimony is that he has suffered no such damages. *See, e.g.,* Defendant's Appendix at 67–68 (Kish Deposition at 211–12) (acknowledging that Kish has no "hard facts" that anything that Iowa Central said or communicated hurt his chances of getting a coaching job in Missouri or elsewhere); *see also* Defendant's Appendix at 69–72 (Kish Deposition at 213, 230–31, & 235). Therefore, Kish has failed to generate a genuine issue of material fact on the essential element of damages on his "false light" claim, and Iowa Central is consequently entitled to summary judgment on that claim as a matter of law. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re TMJ Implants,* 113 F.3d at 1492.

### III. CONCLUSION

The court concludes that Kish has failed to generate a dispute that "might affect the outcome of the suit under the governing law," such that it would "properly preclude the entry of summary judgment" on any of his claims. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Rather, Iowa Central is entitled to summary judgment on Kish's First, Second, and Fifth Causes of Action, concerning breach of contract, because Kish abandoned his positions after any "termination" was revised to a suspension with pay as to his coaching contract and full reinstatement to his retention coordinator position; Kish agreed to this resolution, worked a few days pursuant to that agreement, then resigned and left the

state. Moreover, Iowa Central is entitled to summary judgment on Kish's claim that it breached Kish's coaching contract, because his coaching contract could be terminated "at the pleasure of the Board." Iowa Central is entitled to summary judgment on Kish's due process claim, because he had no protectible property interest in his coaching contract, again, because it could be terminated "at the pleasure of the Board," and he received any process to which he was due on his termination from his retention coordinator position, because he was promptly reinstated with full pay and benefits. Finally, Iowa Central is entitled to summary judgment on Kish's "false light" claim, because the undisputed record demonstrates that Kish has suffered no damages causally related to Iowa Central's press release concerning his "release" from his positions with the college.

Therefore, Iowa Central's motion for summary judgment is **granted.** Judgment in favor of Iowa Central shall enter on all claims.

**IT IS SO ORDERED.**